UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HEARTLAND REGIONAL<br>MEDICAL CENTER, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 00-2802 (RMU) |
| | : | |
| v. | : | Document Nos.: 25, 26 |
| | : | |
| MICHAEL O. LEAVITT,[1] | : | |
| in his official capacity as Secretary of<br>Health and Human Services, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**I. INTRODUCTION**

This matter comes before the court on the parties' cross-motions for summary judgment. The plaintiff, Heartland Regional Medical Center ("Heartland"), requests that the court reverse and remand the Department of Health and Human Services' ("HHS") decision that prevented Heartland from obtaining Medicare reimbursements from 1992 through 1999. Because HHS's decision cures the deficiencies noted by this court in a previous administrative appeal, the court denies the plaintiff's motion for summary judgment and grants the defendant's motion for summary judgment.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), if a public officer named as a party to an action in his official capacity ceases to hold office, the court will automatically substitute that officer's successor.

## II.  BACKGROUND

### A.  Factual History

Medicare reimburses certain hospitals for medical care provided to eligible elderly and disabled persons.  42 U.S.C. §§ 395 *et seq.*  Congress authorizes the Secretary of HHS to impose certain limitations on Medicare reimbursements; however, the Secretary may not impose reimbursement limitations on a "sole community hospital" ("SCH").  *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 9 (D.D.C. 2004) ("*Heartland II*").  From 1992 through 1998,[2] a hospital located less than 35 miles from other like hospitals could qualify as an SCH if it was located in a "rural" area and met at least one of three additional criteria.[3]  42 C.F.R. § 412.92(a) (1992).  The regulations define "rural" as "any area outside an urban area" and define "urban area" as a Metropolitan Statistical Area ("MSA").[4]  42 C.F.R. § 412.62(f)(ii),(iii) (1992).

In May 1992, the plaintiff submitted a request for SCH status, but because the plaintiff was located in an "urban area" less than 35 miles away from the nearest like hospital, the Health Care Financing Administration denied the plaintiff's request.  *Id.* at 10.  Heartland appealed the decision to the Provider Reimbursement Review Board ("the Board") challenging the rural requirement in 42 C.F.R. § 412.92(a).  Def.'s Mot. for Summ. J. ("Def.'s Mot.") at 2.  Because Heartland's challenge "raised 'a question of law or regulations,'" the Board determined that it

---

[2]  In 1999 Congress passed the Medicare Balanced Budget Refinement Act of 1999, removing the "rural requirement" from SCH eligibility requirements, and in 2000, the Health Care Financing Administration granted Heartland SCH status.  42 U.S.C. § 1395ww(d)(8)(E)(i), (ii)(III); Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") at 11.

[3]  The plaintiff submitted evidence to prove one of the criterion: that "[n]o more than 25 percent of residents who become hospital inpatients . . . in the hospital's service area are admitted to other like hospitals located within a 35-mile radius of the hospital, or, if larger within its service area."  42 C.F.R. § 412.92(a)(1)(i) (1992).

[4]  From 1992 through 1998, a Metropolitan Statistical Area ("MSA") was "either a city with a population of at least 50,000 or a Bureau of the Census urbanized area of at least 50,000 and a total metropolitan statistical area population of at least 100,000."  45 Fed. Reg. 956, 956 (Jan. 3, 1980).

lacked jurisdiction and, therefore, granted the plaintiff's request for expedited judicial review. *Id.*

### B.  Procedural History

In *Heartland Hospital v. Shalala*, No. 95-951 (D.D.C. June 15, 1998) ("*Heartland I*"), the plaintiff brought suit against HHS challenging the rural requirement. *Id.* at 1. The plaintiff moved for summary judgment claiming that the rural requirement was "arbitrary and capricious and, therefore, invalid under the Administrative Procedure Act ('APA')." *Heartland II*, 328 F. Supp. 2d at 10. In 1998, the late Judge Harold Greene granted summary judgment in favor of the plaintiff, stating that "[t]he failure of the Secretary to respond to reasonable alternatives suggested during the comment period renders the adoption of the regulations arbitrary and capricious and, consequently, invalid." *Heartland I* at 23-24. The court reasoned that "[r]esponding to only one alternative . . . is not enough to satisfy the APA." *Id.* at 20-21. The order accompanying the opinion remanded the action to HHS "for action consistent with the foregoing opinion." *Heartland I*, Order (June 10, 1998).

On remand, HHS requested proposals from the plaintiff and the agency's staff on how to interpret this court's order. Def.'s Mot. at 12.[5] HHS then determined "that the district court in *Heartland I* had remanded the case for further explanation of the agency's choice of MSAs to define urban area[,] . . . but it did not vacate the regulation itself." Def.'s Mot. at 12. In September 2000, HHS issued a final ruling concerning Heartland's request for SCH status, "again applying the rural requirement based on the MSA based definition of urban areas, and again denying Heartland SCH status." *Heartland II*, 328 F. Supp. 2d at 11.

---

[5]  HHS also issued a notice indicating that it would continue using the MSA-based definition of "urban area" for SCH purposes. 64 Fed. Reg. 24,716; 24,732 (May 7, 1999). The agency solicited public comments on the issue, *id.*, and on July 30, 1999, the Secretary issued the final rule readopting the use of the MSA-based definition of "urban," Pl.'s Mot. at 8-9.

In November 2000, Heartland moved this court to enforce the judgment of *Heartland I* and to reverse and remand HHS's September 2000 decision for violating the APA. *Id.* This court stayed the APA challenges and denied Heartland's motion to enforce, reasoning that "reconsider[ing] the alternatives to the MSA" and "conclude[ing] that they are inferior" was "all that was required by the prior judgment." *Id.* at 15. Furthermore, the court noted that "Judge Greene did not intend to grant the plaintiff SCH status, reimbursement and interest." *Id*. The D.C. Circuit affirmed, stating that what *Heartland I* required was "HHS' reconsideration of the alternatives to the MSA based definition of 'urban area,' . . . [and] if Heartland is to obtain further relief, it must seek it through a separate APA challenge." *Heartland Reg'l Med. Ctr. v. Leavitt*, 415 F.3d 24, 33 (D.C. Cir. 2005) ("*Heartland III*"). Having resolved the plaintiff's motion to enforce, the court now turns to the plaintiff's APA challenges.

### III.  ANALYSIS

#### A. Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Id.*

The moving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene*, 164 F.3d at 675 (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006).  Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial."  *Greene*, 164 F.3d at 675.

### B.  Administrative Procedure Act Standards

Pursuant to the Medicare statute, this court reviews Board decisions in accordance with standard of review set forth in the APA.  42 U.S.C. § 1395oo(f)(1); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994); *Mem'l Hosp./Adair County Health Ctr., Inc. v. Bowen*, 829 F.2d 111, 116 (D.C. Cir. 1987).  The APA requires a reviewing court to set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence in a case . . . otherwise reviewed on the record of

an agency hearing provided by statute." 5 U.S.C. § 706(2)(A), (E). The arbitrary-and-capricious standard and the substantial-evidence standard "require equivalent levels of scrutiny."[6] *Adair County*, 829 F.2d at 117. Under both standards, the scope of review is narrow and a court must not substitute its judgment for that of the agency. *Motor Veh. Mfrs. Ass'n v. State Farm Mutual Ins. Co.*, 463 U.S. 29, 43 (1983); *Gen. Teamsters Local Union No. 174 v. Nat'l Labor Relations Bd.*, 723 F.2d 966, 971 (D.C. Cir. 1983). As long as an agency has "examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made," courts will not disturb the agency's action. *Motor Veh. Mfrs. Ass'n*, 463 U.S. at 43. The burden of showing that the agency action violates the APA standards falls on the provider. *Diplomat Lakewood Inc. v. Harris*, 613 F.2d 1009, 1018 (D.C. Cir. 1979); *St. Joseph's Hosp. (Marshfield, Wis.) v. Bowen*, 1988 WL 235541, at *3 (D.D.C. Apr. 15, 1988).

In reviewing an agency's interpretation of its regulations, the court must afford the agency substantial deference, giving the agency's interpretation "controlling weight unless it is plainly erroneous or inconsistent with the regulation."[7] *Thomas Jefferson*, 512 U.S. at 512 (internal quotations omitted); *Presbyterian Med. Ctr. of Univ. of Pa. Health Sys. v. Shalala*, 170 F.3d 1146, 1150 (D.C. Cir. 1999); *see also Qwest Corp. v. Fed. Commc'ns Comm'n*, 252 F.3d 462, 467 (D.C. Cir. 2001) (stating that the court would reverse an agency's reading of its

---

[6] The D.C. Circuit has explained that the substantial-evidence standard is a subset of the arbitrary-and-capricious standard. *Sithe/Indep. Power Partners v. Fed. Energy Regulatory Comm'n*, 285 F.3d 1, 5 n.2 (D.C. Cir. 2002). "While the substantial evidence test concerns support in the record for the agency action under review, the arbitrary and capricious standard is a broader test subsuming the substantial evidence test but also encompassing adherence to agency precedent." *Adair County*, 829 F.2d at 117.

[7] "[A court's] review in such cases is 'more deferential . . . than that afforded under Chevron.'" *Wyo. Outdoor Council v. United States Forest Serv.*, 165 F.3d 43, 52 (D.C. Cir. 1999) (quoting *Nat'l Med. Enters. Inc. v. Shalala*, 43 F.3d 691, 697 (D.C. Cir. 1995)).

regulations only in cases of a clear misinterpretation). "So long as an agency's interpretation of ambiguous regulatory language is reasonable, it should be given effect." *Wyo. Outdoor Council v. United States Forest Serv.*, 165 F.3d 43, 52 (D.C. Cir. 1999). Where the regulations involve a complex, highly technical regulatory program such as Medicare, broad deference is "all the more warranted." *Thomas Jefferson*, 512 U.S. at 512 (internal quotations omitted); *Presbyterian Med. Ctr.*, 170 F.3d at 1151.

### C.  HHS Fulfilled its Obligations Under the APA

The parties disagree over whether Judge Greene's opinion in *Heartland I* vacated the entire rural requirement or simply remanded the case back to HHS for further explanation regarding the adoption of the MSA-based definition of "urban area." Although the word "vacate" does not appear in the *Heartland I* opinion and order, the plaintiff argues that the invalidation of the rural requirement is synonymous with vacatur. Pl.'s Mot. at 14-16. The defendant, on the other hand, maintains that "[i]n the absence of an explicit vacating of the rule defining urban areas by reference to MSAs, it was reasonable for the Secretary to have concluded that this Court simply remanded the matter to the agency for further explanation." Def.'s Mot. at 21.

The court need not decide whether the language in *Heartland I* vacated the rural requirement or remanded for further explanation. As this court stated in *Heartland II*, "[c]onsideration of the alternatives was the decisive factor in *Heartland*, and the Secretary's lack of consideration, not a fundamental flaw in the rural requirement itself, ultimately caused the court to invalidate the rural requirement." *Heartland II*, 328 F. Supp. 2d at 13. On appeal, the Circuit affirmed this court's reasoning and went on to note that "the usual rule is that *with or without vacatur*, an agency that cures a problem identified by a court is free to reinstate the

original result on remand." *Heartland III*, 415 F.3d at 29-30 (emphasis added) (citing *FEC v. Akins*, 524 U.S. 11, 25 (1998); *Nat'l Treasury Employees Union v. Fed. Labor Relations Auth.*, 30 F.3d 1510, 1514 (D.C. Cir. 1994)).  Accordingly, the court considers whether the agency cured the problems identified in *Heartland I* and properly reinstated the original result.

### 1.  HHS did Not Arbitrarily Reject the Alternatives to an MSA-Based Definition of Urban Area

The plaintiff asserts that the HHS adjudication was a "sham" and erroneously "applied a definition that had been adopted in a separate general rulemaking proceeding which did not even purport to have anything to do with the facts of this case or the evidentiary record before the agency."  Pl.'s Mot. at 28, 31.  This, the plaintiff insists, "runs counter to the role of a legitimate adjudication."  *Id.* at 31.  But, the plaintiff fails to recognize the "time-honored distinction between rulemaking and adjudication," the former based on legislative facts and the latter based on adjudicative facts.  *Indep. Bankers Ass'n v. Bd. of Governors of the Fed. Reserve Sys.*, 516 F.2d 1206, 1215 & n.26 (D.C. Cir. 1975).  Indeed, an agency "is not precluded from announcing new principles in an adjudicative proceeding," *Nat'l Labor Relations Bd. v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974), and that "choice between rulemaking and adjudication lies in the first instance within the [agency's] discretion."  *Cassell v. FCC*, 154 F.3d 478, 486 (D.C. Cir. 1998) (quoting *NLRB*, 416 U.S. at 294) (alteration in original).

This court, as the plaintiff acknowledges, determined that the deficiencies in HHS's original determination rested solely with the agency's rulemaking procedures – "fail[ing] to consider or respond to reasonable alternatives to the use of [MSAs] as the relevant measure." Pl.'s Mot. at 29 (quoting *Heartland I*, at 24); *see Heartland I*, at 15 (analyzing the deficiencies in a section entitled "Rulemaking Procedures").  Thus, "the only obligation it expressly imposed on the agency was to consider the two alternatives suggested during the comment period."

*Heartland III*, 415 F.3d at 29.  And, after examining the record, it becomes clear that HHS examined "the relevant data [i.e. legislative facts] and articulated a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Veh. Mfrs. Ass'n*, 463 U.S. at 43 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).[8]

On remand, HHS again adopted the MSA-based definition of "urban area" because of its reliance on commuting patterns, which are "indicative of better roads, faster snow clearing and more available hospitals . . . [which] affect access to inpatient hospital services."  Pl.'s Mot., Ex. 16 ("HHS Order") at 23.  More importantly, HHS specifically addressed the two proposed alternatives to the MSA-based definition, which was the "decisive factor" for invalidating the rule in *Heartland I*.  *Heartland II*, 328 F. Supp. 2d at 13.  First, HHS explained that it did not implement the Census Bureau's definition of "urban area" because it relied on population density rather than commuting patterns, which is a "more appropriate measure."  HHS Order at 23-24.  Second, HHS reasoned that the use of health planning areas to define rural would be inappropriate because (1) "no commentator actually explained how health planning areas could be used to define 'rural' areas"; (2) the areas are "affected by . . . budgetary constraints and

---

[8] The cases cited by the plaintiff do not undermine this settled rule. Pl.'s Mot. 31-32 (citing *United States v. Fla. E. Coast Ry.*, 410 U.S. 224, 245 (1973) (observing a "distinction in administrative law between proceedings for the purpose of promulgating policy-type rules or standards, on the one hand, and proceedings designed to adjudicate disputed facts in particular cases on the other); *SEC v. Chenery Corp.*, 332 U.S. 194, 207 (1947) (holding that "[t]he scope of our review of an administrative order wherein a new principle is announced and applied is no different from that which pertains to ordinary administrative action"); *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 440 F.3d 459, 464 (D.C. Cir. 2006) (noting that a "determination of whether to require a permit in a given case will, as is usual in an agency adjudication, rest on case-specific findings"); *Interstate Natural Gas Ass'n of Am. v. FERC*, 285 F.3d 18, 53 (D.C. Cir. 2002) (vacating a policy because "the record simply lacks indicators" of the reasons for the agency's decision); *Indep. Bankers Ass'n v. Bd. of Governors of Fed. Reserve Sys.*, 516 F.2d 1206, 1215 (D.C. Cir. 1975) (recognizing the "time-honored distinction between rulemaking and adjudication")).

statutory exemptions . . . [which] are not reflective of changes in factors indicative of access"; and (3) "the use of health planning areas may not lend itself to a national program" as "there was no longer a national criteria for health planning areas in effect." HHS Order at 24-25. Because the articulated reasons provide a satisfactory explanation based on the relevant data, the court concludes that HHS did not arbitrarily reject the alternatives.

The plaintiff next contends that the agency's definition of rural was inadequate. Pl.'s Mot. at 31. Specifically, the plaintiff alleges that the agency's two-sentence definition of "rural"[9] is insufficient because it does not analyze whether Heartland was a sole community hospital under factors approved by Congress. *Id.* (citing 42 U.S.C. § 1395ww(d)(5)(D)(iii)(II)). The plaintiff's argument is misguided. Congress granted the Secretary broad authority to promulgate a standard to determine whether a hospital is an SCH, 42 U.S.C. § 1395ww(a)(2)(A), and this court has already held that the MSA-based definition of "urban area" was not contrary to this statutory authority, *Heartland I*, at 12-15; *Heartland II*, 328 F. Supp. 2d at 13 (stating that *Heartland I* "found nothing wrong with the regulation itself"). Furthermore, the plaintiff has never before argued that it did not fall within the MSA-based definition of "urban area." In fact, HHS and this court asserted that Heartland is in an urban area, and the plaintiff did not appeal either of these determinations. *Heartland I*, at 2 (noting that "Heartland is located in an urban area"). Finally, the basis for remand in *Heartland I* was not to re-adjudicate whether the plaintiff is an urban hospital, but "only . . . to consider the two alternatives suggested during the comment period." *Heartland III*, 415 F.3d at 29. Accordingly, the court will not disturb HHS's previous, undisputed findings.

---

[9]   "In defining rural, the Administrator finds that the adoption of a[n] MSA-based rural definition is appropriate and reasonable for the reasons already articulated above. Consequently, the Administrator finds that an MSA-based rural requirement is properly applied in this case." Pl.'s Mot., Ex. 16 ("HHS Order") at 29.

## 2.  HHS did Not Engage in Impermissible Retroactive Rulemaking

The plaintiff acknowledges that an agency may create a retroactive rule through adjudication.  Pl.'s Mot. at 32.  The plaintiff, however, argues that when a rule is applied retroactively, it "is meant to apply *prospectively* as well."  *Id.*  While not explicitly stated, the court infers that the plaintiff would like the court to hold that agencies may not apply a rule retroactively without also applying it prospectively.  *See id.*

The D.C. Circuit has never adopted such an approach.  *See id.*  To the contrary, this Circuit has noted that "[i]n cases in which there are 'new applications of existing law, clarifications, and additions,' the courts start with a presumption in favor of retroactivity." *Verizon Tel. Cos. v. FCC*, 269 F.3d 1098, 1109 (D.C. Cir. 2002) (quoting *Health Ins. Ass'n of Am. v. Shalala*, 23 F.3d 412, 424 (D.C. Cir. 1994)).  Indeed, "[j]udicial decisions *normally* apply retroactively," and this Circuit has enunciated a five-part test courts use to determine whether to withhold retroactive application of a rule promulgated through adjudication.  *Clark-Cowlitz Joint Operating Agency v. FERC*, 826 F.2d 1074, 1081 (D.C. Cir. 1987) (en banc) (emphasis added) (quoting *Mullins v. Andrus*, 664 F.2d 297, 302-03 (D.C. Cir. 1980)).  The factors include:

> (1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden with a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard.

*Id.*  The plaintiff advances no argument addressing these factors, and the court notes that the factors do not favor withholding retroactive application.  For example, because defining "rural" from the MSA-based definition of "urban area" is the same as the "old standard" or "former

11

rule," no "abrupt departure" is at play, and the plaintiff would suffer no prejudice from reapplying a definition previously in use.

The plaintiff next contends that the "proper course should have been to evaluate Heartland's SCH status under the regulation as if the 'rural' requirement had simply been removed from it." Pl.'s Mot. at 30-31. This proposition is contrary to this Circuit's "usual rule [] that *with or without vacatur*, an agency that cures a problem identified by a court is free to reinstate the original result on remand." *Heartland III*, 415 F.3d at 29-30 (emphasis added) (citing *FEC v. Akins*, 524 U.S. 11, 25 (1998); *Nat'l Treasury Employees Union v. Fed. Labor Relations Auth.*, 30 F.3d 1510, 1514 (D.C. Cir. 1994)) *but cf. ICORE v. FCC*, 985 F.2d 1075, 1081 (D.C. Cir. 1993) (holding that an agency could reinstate a rule after curing procedural defects because the court had not vacated the rule); *Select Specialty Hosp. of Atlanta v. Thompson*, 292 F. Supp. 2d 57, 69 n.7 (D.D.C. 2003) (noting that "when a court leaves invalid rules in place upon remand to the agency for further explanation, . . . the agency's promulgation of a new rule after reconsideration does not have an impermissible retroactive effect"). In addition, the case the plaintiff cites, *Action on Smoking & Health v. Civil Aeronautics Bd.*, 713 F.2d 795, (D.C. Cir. 1983), is inapposite because in that case the agency tried to "remedy a deficiency in one regulation by promulgating a new rule, equally defective for the same or other reasons." *Id.* at 798-99. Here, as discussed *supra*, the agency appropriately addressed the prior deficiencies.

Finally, the plaintiff asserts that the Supreme Court's holding in *Bowen v. Georgetown University Hospital* prevents HHS from promulgating rules with retroactive effect because the Medicare Act does not explicitly provide such authority. Pl.'s Mot. at 33-34 (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)). *Bowen* discussed "retroactive

promulgation of cost-limit rules," and based on the "structure and language of the statute," the Court held that Congress's grant of authority to enact retroactive provisions "applies only to case-by-case adjudication, not to rulemaking." *Bowen*, 488 U.S. at 209 (analyzing 42 U.S.C. § 1395x(v)(1)(A)(ii), which requires the Secretary to "provide for the making of suitable retroactive corrective adjustments"). Notably, the Court set forth the Secretary's arguments for upholding retroactive rulemaking: (1) "invalidation of a prospective rule is a unique occurrence that creates a heightened need, and thus a justification, for retroactive curative rulemaking"; (2) congressional intent and administrative goals may be thwarted if rules cannot be cured; and (3) reliance interests are less compelling because the original invalidated rule provided notice. The Court stated that these arguments need not be addressed but may have weight in "other contexts."

     This case presents such a context. Congress grants broad authority to the Secretary to "promulgate a standard for determining whether a hospital meets the criteria for classification as a sole community hospital." 42 U.S.C. § 1395ww(d)(5)(D)(iv) (1992). Once classified as an SCH, the hospital is exempt from the cost limits discussed in *Bowen*. 42 U.S.C. § 1395ww(a)(2)(A) (1992). Congress provides factors to consider in determining whether a hospital is an SCH, such as "the time required for an individual to travel to the nearest alternative source of appropriate inpatient care . . ., location, weather conditions, travel conditions, [] absence of other like hospitals . . ., [and whether it] is the sole source of inpatient hospital services reasonably available to individuals in a geographic area." 42 U.S.C. § 1395ww(d)(5)(D)(iii)(II) (1992). In promulgating a standard to determine whether a hospital meets these criteria, an agency can "supplement or refine the test set forth in its regulation by adjudication." *City of Orrville v. FERC*, 147 F.3d 979, 988 n.11 (D.C. Cir. 1998); *accord*

*Verizon Tel. Cos. v. FCC*, 269 F.3d 1098, 1109 (D.C. Cir. 2001) (cautioning that "the ill effects of retroactivity 'must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles'" (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947))).

On remand, HHS supplemented its test by requiring Heartland to be a "rural" hospital. *See id.* HHS then applied this requirement only to Heartland, not generally as in *Bowen*. *See Select Specialty Hosp.*, 292 F. Supp. 2d 57, 70-71 (D.D.C. 2003) (finding no retroactive rulemaking although an adjudication proceeding concerning Medicare reimbursements for 1998 adopted the identical reasoning of a 2001 rulemaking because the rulemaking was not applied "across the board to FY 1998"). Moreover, HHS applied the "rural" requirement only after curing the specific procedural flaws identified by this court in *Heartland I*, and this application, as stated *supra*, complies with this Circuit's five-factor "framework for evaluating retroactive application of rules announced in agency adjudications." *Cassell v. FCC*, 154 F.3d 478, 486 (D.C. Cir. 1998) (upholding the retroactive application of a new rule in an adjudicative proceeding because it would not result in manifest injustice) (quoting *Clark-Cowlitz*, 826 F.2d at 1081). Accordingly, the court concludes that HHS did not engage in impermissible retroactive rulemaking, and HHS was "free to reinstate the original result on remand." *Heartland III*, 415 F.3d at 29-30.[10]

---

[10] The plaintiff also contends that HHS's finding that it presented insufficient evidence of its service area is contrary to the regulation's plain language and procedurally improper. Pl.'s Mot. at 20-28 (citing 42 C.F.R. § 412.92(a)(1)(i) (1992)). Because HHS properly found that Heartland could not qualify as an SCH due to its "urban" location, the court need not address whether the plaintiff satisfied the remaining SCH requirements. 42 C.F.R. § 412.92(a) (1992) (requiring an SCH to be "located in a rural area . . . *and* meet[] one of the following conditions") (emphasis added).

## V.  CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment and denies the plaintiff's motion for summary judgment.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 4th day of September, 2007.

RICARDO M. URBINA  
United States District Judge
